**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

NELLONDA WHITAKER,                              *

    **Plaintiff,**                              *

v.                                                     **Case No.: GJH-19-2488**

                                              *

BOARD OF EDUCATION FOR PRINCE
GEORGE'S COUNTY PUBLIC
SCHOOLS, *et al.*,

                                              *

    **Defendants.**

                                              *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Nellonda Whitaker, on behalf of her minor child, J.J. (the "Student"), filed suit against Defendants Prince George's County Board of Education, Prince George's County Public Schools, Monica Goldson, and Gwendolyn Mason, alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* ECF No. 1. Specifically, Plaintiff challenges the Decision of an Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings ("OAH"), issued on May 1, 2019. *Id.* Pending before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 11, and Defendants' Cross-Motion for Summary Judgment, ECF No. 19.[1] No hearing is necessary to resolve the pending motions. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Plaintiff's Motion for Summary

---

[1] Also pending before the Court is Defendants' Motion for Extension of Time to file their Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment, filed on January 28, 2020. ECF No. 13. In the Motion, Defendants request that the January 30, 2020 deadline for filing their Cross-Motion and Opposition be extended by one week to February 6, 2020. *Id.* Plaintiff opposes the Motion. ECF No. 14. Because Defendants ultimately filed their Cross-Motion and Opposition only one day late—on January 31, 2020—and the Court prefers to rule on the merits of the case, rather than resolve the matter based on procedural issues, the Motion for Extension is granted.

Judgment is denied and Defendants' Cross-Motion for Summary Judgment is granted. The ALJ's Decision is thus affirmed.

## I.      BACKGROUND

### A.  Statutory Background

"Congress enacted IDEA in 1970 to ensure that all children with disabilities are provided a 'free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected.'" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009) (citation omitted). To this end, IDEA mandates that "all states receiving federal funds for education must provide disabled schoolchildren with a 'free appropriate public education,'" commonly referred to as a "FAPE." *J.P. ex rel. Peterson v. Cty. Sch. Bd.*, 516 F.3d 254, 257 (4th Cir. 2008) (citation omitted).

"A school provides a FAPE by developing an [Individualized Education Program ("IEP")] for each disabled child." *Id.* The IEP consists of "a written statement for each child with a disability," 20 U.S.C. § 1414(d)(1)(A)(i), which "must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress," *J.P.*, 516 F.3d at 257 (citation and internal quotation marks omitted). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S.Ct. 988, 999 (2017).

### B.  Factual Background[2]

As of the filing of the Complaint, the Student was an eleven-year-old male attending

school within the Prince George's County Public School System ("PGCPS"). ECF No. 1 ¶ 4.

Prior to October 2018, the Student attended John Bayne Elementary School ("Bayne"). *See* ALJ

Decision, Findings of Fact ¶¶ 1, 2. On December 4, 2017, Plaintiff submitted a written request

for an initial special education evaluation of the Student, and on January 2, 2018, the IEP Team

met to discuss the Student's eligibility and the formal assessments that would be used to

determine whether the Student had a disability requiring special education and related services.

*See* Parent Ex. C, September 11, 2018 IEP at 2.[3] These assessments included a Speech and

Language Assessment conducted on February 26, 2018, which found no problems in the areas of

speech and articulation, *see* ALJ Decision, Findings of Fact ¶ 14, and a Functional Behavioral

Assessment ("FBA") conducted on February 27, 2018, which revealed problematic behaviors,

*see id.* ¶ 15. As a result of the formal assessments, the Student was diagnosed with an Emotional

Disability ("ED"), which is a disability under the IDEA. *Id.* ¶  5.

At an IEP Team Meeting on March 20, 2018,[4] the IEP Team approved the Student's IEP,

which included goals for Math Calculation, Math Problem Solving, and Social

Emotional/Behavioral, *see* Parent Ex. B, March 20, 2018 IEP at 1, and it updated a preexisting

Behavior Improvement Plan ("BIP") to address the Student's problematic behaviors, *see* ALJ

---

[2] All facts herein are taken from the ALJ's Decision, *J.J. v. Prince George's County Public Schools*, OAH No. MSDE-PGEO-OT-19-06751 (2019) (hereinafter, "ALJ Decision"), or Plaintiff's Complaint, ECF No. 1, unless otherwise noted.

[3] The administrative record was not filed on the Court's electronic filing system, but was instead filed separately due to its size. *See* ECF No. 12. As a result, the Court will refer to documents in the record using the labeling system used by the ALJ and the page numbers from each document's internal numbering.

[4] The ALJ's Findings of Fact state that the Student has had an IEP since 2017. *See* ALJ Decision, Findings of Fact ¶ 1. The Complaint and the Court's review of the administrative record appear to establish that the Student has had an IEP since March 2018, *see* March 20, 2018 IEP, and thus the ALJ's reference to 2017 was likely a clerical or typographical error.

Decision, Findings of Fact ¶ 15. The IEP was amended at an IEP Team Meeting on September 11, 2018. *See* Parent Ex. C, September 11, 2018 IEP.

At some point during the spring or summer of 2018, Plaintiff requested that PGCPS conduct an Independent Educational Evaluation ("IEE") for the Student in the areas of Speech and Language, Occupational Therapy, and Behavior. *See* Parent Ex. O, PGCPS IEE Letter. On July 3, 2018, PGCPS agreed to fund an FBA for the Student and instructed Plaintiff to choose a provider who met the PGCPS IEE Guidelines to conduct the assessment. *See id.* On October 23, 2018, a registered behavior technician completed an FBA of the Student. *See* ALJ Decision, Findings of Fact ¶ 16. A dispute subsequently arose over the IEEs, and PGCPS and Plaintiff entered into a resolution agreement on October 29, 2018 in which PGCPS agreed to fund IEEs in the areas of Speech and Language and Occupational Therapy and to provide 72 hours of compensatory education to the Student (the "IEE Resolution Agreement"). *See* ALJ Decision, Finding of Fact ¶ 17; Parent Ex. Q. On December 17, 2018, a speech-language pathologist who contracts with PGCPS conducted a speech and language evaluation of the Student. *See* ALJ Decision, Findings of Fact ¶ 20.

PGCPS eventually recommended that the Student transition from Bayne to North Forestville Elementary School Transition Program ("NFES") in order to best serve his educational and behavioral needs. *Id.* ¶ 1. NFES is described as a transition school that provides smaller class sizes with a minimum of two adults, and it serves both students with disabilities and students without disabilities. *Id.* ¶¶ 2, 4. NFES provides behavioral supports, individual and group therapy with a school psychologist, a crisis intervention room staffed by two crisis intervention teachers, a mental health partnership with the University of Maryland, and a behavior management system with the use of a daily point sheet to earn prizes. *Id.* ¶ 2. Plaintiff

ultimately agreed to the change in the Student's school placement, *id.* ¶ 1, and the Student began attending NFES in October 2018, *id.* ¶ 2.

Shortly after the Student began attending NFES, Ms. Moreland became the NFES Wing Coordinator. *Id.* ¶ 18. Her duties include conducting teacher observations, assisting teachers, scheduling mediations and other related meetings, and updating student progress reports and providing those reports to parents. *Id.* ¶¶ 18, 19. She is an expert in Special Education. *See* ALJ Decision at 19.

From January 2019 until March 22, 2019, the Student had a long-term substitute teacher, Ms. Stallings-Cofield. *Id.* ¶ 8. Ms. Stallings-Cofield was not a Certified Special Education Teacher, but she received support from other teachers in the areas of reading and mathematics. *Id.* On March 22, 2019, Ms. Kishida, a Certified Special Education Teacher, joined the classroom, but Ms. Stallings-Cofield remained in the classroom working with the students. *Id.* ¶ 9.

NFES used various behavioral strategies to address the Student's behavior. To reinforce positive behavior, the Student earned points via the school's daily point sheet, as well as "Falcon Bucks" that he could redeem for prizes.[5] *Id.* ¶ 10. To address the Student's problematic behaviors, his IEP lists crisis intervention as a Social/Behavioral support to be used as needed and to be provided by the social worker, psychologist, guidance counselor, or school-based mental health professional. *Id.* ¶ 11. The Student utilized the school's crisis intervention room nineteen times as a result of engaging in problematic behaviors, *id.*, and between October 10, 2018 and April 2, 2019, he was disciplinarily removed for a total of sixteen days, *id.* ¶ 12. Specifically, he was removed for one day on October 10, 2018, one day on October 31, 2018,

---

[5] The Falcon is NFES's mascot. *See* ALJ Decision at 20 n.9.

four days between December 5, 2018 and December 12, 2018, four days between December 17, 2018 and January 2, 2019, five days between February 7, 2019 and February 15, 2019, and one day on April 2, 2019. *See* Parent Ex. Q, Notifications of Disciplinary Removals; ALJ Decision at 48.

During the Student's first year at NFES, the IEP Team met twice to review the IEP and twice to conduct Manifestation Determination Reviews ("MDR") to determine whether the Student's removals were a manifestation of his disability. The annual review of the Student's IEP and the first MDR were scheduled for March 14, 2019. *Id.* ¶¶ 23, 28; *see* ALJ Decision at 47. Ms. Moreland sent Prior Written Notice ("PWN") of the IEP Meeting to Plaintiff via email, mail, and the Student, but Plaintiff did not attend the meeting. *See* ALJ Decision, Findings of Fact ¶ 22. At the meeting, the IEP Team revised the IEP to include updated academic information, such as standardized testing scores from the fall, updated behavioral information, crisis intervention room visits, disciplinary removal information, and updated measurable goals, and it reviewed the IEEs previously provided by Plaintiff. *Id.* The IEP Team determined that the IEEs provided by Plaintiff had no value—Ms. Trussell, a Speech Language Instructional Specialist and Speech Language Pathologist, explained that the speech and language evaluation had no value because it had used an outdated version of the Comprehensive Assessment of Spoken Language ("CASL") test to assess the Student, and Ms. Whitfield, a Special Education Instructional Specialist and expert in Special Education with an emphasis in FBA and BIP, explained that the FBA had no value because the assessor failed to adequately observe the Student in multiple settings to develop an appropriate BIP. *Id.* ¶¶ 24–26; ALJ Decision at 24, 27. The IEP Team determined that a new speech and language assessment should be completed and

that the three available BIPs showed that the Student's behavior had improved as the frequency of incidents had decreased. *See* ALJ Decision, Findings of Fact ¶ 26, 27.

At the MDR, the IEP Team considered the eleven total removals that occurred on October 10, 2018 and October 31, 2018, between December 5, 2018 and December 12, 2018, and between February 7, 2019 and February 15, 2019. *See id.* ¶ 28; ALJ Decision at 47. It determined that the behavior that had caused the removals was a manifestation of the Student's disability and the number of removals constituted a change in placement. *See* ALJ Decision, Findings of Fact ¶ 28. To address the denial of FAPE as a result of the disciplinary removals, the IEP Team determined that the Student should receive compensatory services, including one session for thirty minutes of counseling services and two sessions for thirty minutes of math instruction. *Id.* The IEP Team also sought consent from Plaintiff to conduct a new FBA and create a new BIP. *Id.*

On April 3, 2019, the IEP Team met again; this time, Plaintiff and her advocate, Ms. Williams, attended. *Id.* ¶ 30. At the IEP Meeting, the team discussed a revised BIP that had been presented and revised the IEP goals in the areas of Math and Behavioral and Social/Emotional Interaction. *Id.* At the MDR, the IEP Team considered the five days of disciplinary removals that occurred between December 17, 2018 and January 2, 2019 that it had previously missed and the disciplinary removal that had occurred on April 2, 2019. *Id.* ¶ 31. The team determined that the behavior that caused the Student's removals was a manifestation of his disability and that he should receive compensatory services to address the denial of FAPE as a result of the removals. *Id.* The team revised the Student's IEP to include four 30-minute academic support sessions and two 30-minute counseling support sessions. *Id.*

Regarding the Student's progress at NFES, PGCPS sent progress reports to Plaintiff on June 15, 2018, October 29, 2018, February 11, 2019, and March 13, 2019. *Id.* ¶ 19; PGCPS Ex. 49, IEP Progress Reports. As of the third progress period of the 2018–2019 school year, the Student's grades had improved in Math, Social Skills, and Science. *See* ALJ Decision, Findings of Fact ¶ 7.

### C. Procedural Background

On March 1, 2019, Plaintiff filed a Due Process Complaint with OAH requesting a hearing to review the identification, evaluation, or placement of the Student by PGCPS under the IDEA. ALJ Decision at 1. Specifically, the Due Process Complaint alleged that PGCPS denied the Student a FAPE by (1) failing to properly convene MDRs to assess the Student's disciplinary removals; (2) failing to review and revise the Student's IEPs to address his lack of academic and behavioral progress and to reflect the results of his IEEs; (3) failing to address the Student's needs for positive behavioral interventions and supports; (4) agreeing to fund IEEs, but then failing to pay for those evaluations upon their completion and imposing conditions related to obtaining the IEEs beyond the criteria used by PGCPS in initiating an evaluation; (5) failing to provide an appropriate IEP; (6) failing to provide the Student with an educational placement that could successfully address his ED and adverse behaviors; and (7) failing to provide Plaintiff with quarterly IEP progress reports. *See* Due Process Complaint.

The ALJ held a hearing over three separate days in April 2019. *Id.* at 2. As summarized by the ALJ, the issues for decision were:

(1) Did PGCPS fail to comply with IDEA's disciplinary procedures?

(2) Did PGCPS fail to review and revise the Student's IEP as appropriate?

> (3) Did PGCPS fail to sufficiently address the Student's behavior with positive behavior
>
>    interventions and supports?
>
> (4) Did PGCPS fail to provide IEEs?
>
> (5) Did PGCPS fail to provide an appropriate IEP?
>
> (6) Did PGCPS fail to provide an appropriate placement?
>
> (7) Did PGCPS fail to provide quarterly progress reports?

ALJ Decision at 3. The ALJ admitted a total of sixty exhibits from both parties, and she heard

testimony from four different witnesses. *Id.* at 5–7. On May 1, 2019, the ALJ issued her fifty-

page decision, which included thirty-two findings of fact and eight conclusions of law. *Id.* at 7–

12, 50.

      With respect to the Student's disciplinary removals, the ALJ concluded that the Student

was disciplinarily removed for over ten days, PGCPS did not provide services when the Student

was removed, and PGCPS held untimely MDRs on March 14, 2019 and April 3, 2019. ALJ

Decision at 34; ALJ Decision, Conclusions of Law ¶ 1. But the ALJ also found that the

compensatory services offered by PGCPS remedied this substantive violation and that Plaintiff's

assertions to the contrary were unavailing because she failed to provide any specific testimony or

evidence to support her determination. ALJ Decision at 35.

      Regarding the Student's IEP, the ALJ concluded that PGCPS did not fail to review and

revise the IEP in compliance with the relevant regulations requiring IEP review periodically, but

not less than annually. ALJ Decision at 38; ALJ Decision, Conclusions of Law ¶ 2. According to

the ALJ, the evidence showed that the Student's IEP was reviewed and revised on September 11,

2018, as he was recommended to transition to NFES, and that a new draft IEP was completed

based on the annual March 14, 2019 IEP meeting. ALJ Decision at 38. Plaintiff's absence from

the March 14, 2019 IEP meeting did not constitute a violation because she received proper notice and PGCPS provided alternative means for her to participate. *Id.* at 39.

The ALJ also concluded that PGCPS provided the Student with an appropriate IEP because the September and March IEPs addressed the Student's needs, provided support information, and outlined measurable goals that were appropriate to address educational and behavioral concerns. *Id.* at 39, 46. The ALJ also concluded that the student was making more than minimal progress, and therefore PGCPS had not failed to provide a FAPE with respect to the IEP. *Id.* at 46. To the extent that Plaintiff alleged that she could not follow the Student's progress because she did not receive the required quarterly progress reports, the ALJ found that she did receive progress reports for each of the Student's behavioral and academic goals on June 15, 2018, October 29, 2018, February 11, 2019, and March 13, 2019. *Id.* at 41.

In terms of the Student's behavioral supports, the ALJ found that PGCPS failed to implement the Student's IEP between January 2019 and March 22, 2019, when the Student was in a classroom with Ms. Stallings-Cofield, the long-term substitute. ALJ Decision at 22, 37; *see* ALJ Decision, Conclusions of Law ¶ 8. Outside of that time period, however, the ALJ found that PGCPS did not fail to implement behavioral supports identified in the IEP. With respect to positive behavioral supports, the ALJ found that the Student participated in the positive behavioral supports offered to all students, including the daily point sheet and the ability to earn Falcon Bucks. ALJ Decision at 43. With respect to negative behavioral supports, the Student's removal to the crisis intervention room was not a denial of FAPE because that support is specifically identified in his IEP. *Id.* at 36.

Regarding the IEEs, the ALJ concluded that she lacked jurisdiction to enforce the prior IEE Resolution Agreement in which PGCPS agreed to pay for the IEEs and provide certain

compensatory services. ALJ Decision at 32–33. She also concluded that PGCPS's actions with
respect to review and use of the IEEs did not constitute denial of a FAPE. ALJ Decision at 33–
34; *see* ALJ Decision, Conclusions of Law ¶ 5. Specifically, the ALJ found that PGCPS
provided Plaintiff with the IEE guidelines, reviewed the IEEs provided by the Parent at the
March 14, 2019 IEP Meeting, and determined that they did not meet IEE guidelines because the
Speech and Language IEE used an outdated version of the CASL test and the FBA lacked
sufficient observations and data points to determine an appropriate BIP for the Student. ALJ
Decision at 33–34.

Next, the ALJ concluded that PGCPS did not fail to provide the Student with an
appropriate placement. ALJ Decision, Conclusions of Law ¶ 6. The evidence showed that the
Parent was at the meeting where NFES was selected because it provided behavioral support and
trained clinical and mental health staff. ALJ Decision at 42. The ALJ also rejected Plaintiff's
assertion that the placement was inappropriate because the Student's behavior did not improve
while he attended NFES. *Id.* According to the ALJ, the more credible evidence showed that the
Student's behavior was not expected to fully improve in a single calendar year that included a
transition to a new school, but that he did indeed make some progress during his first year at
NFES. *Id.*

On August 28, 2019, Plaintiff filed a seven-count Complaint in this Court, asking that the
ALJ's Decision be reversed, in part. ECF No. 1. Specifically, in Count I, Plaintiff alleges that the
ALJ correctly determined that PGCPS denied the Student a FAPE by failing to timely conduct
MDRs after he was suspended multiple times, but incorrectly concluded that the compensatory
education awarded by PGCPS during the pendency of the Due Process Complaint was sufficient.
*Id.* ¶¶ 42–46. In Counts II through VII, Plaintiff alleges that the ALJ failed to properly analyze

the IDEA's requirements and make appropriate findings of fact and conclusions of law with regard to PGCPS's obligations to review and revise the Student's IEP, provide sufficient positive behavioral interventions and supports, and pay for the IEEs it awarded the Student, the appropriateness of the Student's IEP under the "merely more than *de minimis* standard," the appropriateness of the Student's placement, and PGCPS's obligations to timely provide Quarterly IEP Progress Reports. *Id.* ¶¶ 47–72.

On December 17, 2019, Plaintiff filed a Motion for Summary Judgment. ECF No. 11. On January 31, 2020, Defendants filed a Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. ECF No. 19. Plaintiff filed a consolidated reply in support of her Motion for Summary Judgment and opposition to Defendants' Cross-Motion for Summary Judgment on March 16, 2020, ECF No. 20, and Defendants filed a reply on July 16, 2020, ECF No. 25.

## II.    STANDARD OF REVIEW

Under the IDEA, any party aggrieved by a decision reached by the state educational agency at a due process hearing may bring a civil action in a district court of the United States. 20 U.S.C. § 1415(i)(2). A district court reviewing a decision of the state educational agency "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate," § 1415(i)(2)(C).

A court reviewing an administrative decision under the IDEA conducts a "modified de novo review, giving 'due weight' to the underlying administrative proceedings." *MM ex rel. DM v. Sch. Dist. of Greenville Cty.*, 303 F.3d 523, 530–31 (4th Cir. 2002); *Wagner v. Bd. of Educ. of Montgomery Cty.*, 340 F. Supp. 2d 603, 611 (D. Md. 2004). In evaluating the administrative

findings, findings of fact which are "made in a regular manner and have evidentiary support" are considered "prima facie" correct and a reviewing court that does not adhere to the factual findings must explain its deviation. *Doyle v. Arlington Cty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991). In determining whether such factual findings were "regularly made," a reviewing court "should examine the way in which the state administrative authorities have arrived at their administrative decisions and the methods employed." *Id.* Courts should be particularly hesitant to disturb the "ALJ's determinations of the credibility of witnesses" as "the fact-finder, who has the advantage of hearing the witnesses, is in the best position to assess credibility." *Wagner*, 340 F. Supp. 2d at 611 (quoting *Justin G. v. Bd. of Educ.*, 148 F. Supp. 2d 576, 588 (D. Md. 2001)); *see also Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 600 (M.D. Pa. 2014) (stating that "[a]bsent non-testimonial, extrinsic evidence to the contrary, the court must accept the Hearing Officer's credibility determinations") (citing *Carlisle Area Sch. v. Scott P. ex rel. Bess P.*, 62 F.3d 520, 529 (3d. Cir. 1995)).

Once the reviewing court has given the administrative factfinding due weight, it is then "free to decide the case on the preponderance of the evidence." *Doyle*, 953 F.2d at 105. A district court may, for example, "believe[ ] that the evidence considered as a whole point[s] to a different legal conclusion," despite accepting the factual findings of the officer below. *See Sumter Cty. Sch. Dist. 17 v. Heffernan ex rel. T.H.*, 642 F.3d 478, 485 (4th Cir. 2011). In making its determination, however, district courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Hartmann ex rel. Hartmann v. Loudoun Cty. Bd. of Educ.*, 118 F.3d 996, 1000 (4th Cir. 1997) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)). Pure questions of law are reviewed de novo. *See E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773

13

F.3d 509, 514 (4th Cir. 2014) (discussing exhaustion of administrative remedies as "pure question of law"); *Damarcus S. v. District of Columbia*, No. 15-851 (ESH), 2016 WL 2993158, at *3 (D.D.C. May 23, 2016) (discussing the proper statutory construction of IDEA as a "pure question of law"); *Jana K.*, 39 F. Supp. 3d at 595 (M.D. Pa. 2014) (stating that "[t]he district court's review of the hearing officer's application of legal standards and conclusions of law … is subject to plenary review").

Finally, "just as Plaintiff[] w[as] required to carry the burden of proof in the administrative hearing," *Weast v. Schaffer ex rel. Schaffer*, 377 F.3d 449, 456 (4th Cir. 2004), *aff'd*, 546 U.S. 49 (2005), Plaintiff must also carry that burden in this court, as she is the party seeking relief. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005); *see also Wagner*, 340 F. Supp. 2d at 611 (describing plaintiffs in IDEA cases as facing an "uphill battle").

## III.    DISCUSSION

The parties each move for summary judgment on all counts in the Complaint, with Plaintiff contending that the ALJ's decision must be reversed, in part, and Defendants seeking affirmance of the decision. In addition to addressing the claims set out in the specific counts in the Complaint, Plaintiff's Motion for Summary Judgment also addresses more general claims of ALJ error that Plaintiff contends warrant reversal. The Court will first address these general contentions before resolving arguments raised through specific counts in the Complaint.

### A.  General Contentions of Reversible Error

In each count of the Complaint, Plaintiff alleges that the ALJ failed to make appropriate findings of fact and conclusions of law based on the documentary and testimonial evidence presented at the hearing and that this constitutes reversible error. Moreover, although not included in the Complaint, Plaintiff contends in her Motion for Summary Judgment that the ALJ

14

committed reversible error by failing to conduct a proper hearing, lacking sufficient knowledge

of the content and legal interpretations of the IDEA and relevant federal and state regulations,

and failing to rule on all issues in the Due Process Complaint and issuing rulings on issues that

were not pleaded. ECF No. 11-2 at 22–25.[6] None of these contentions entitle Plaintiff to

summary judgment.

Aside from the findings associated with the specific counts in the Complaint that the

Court will address below, Plaintiff identifies three specific factual findings that she contends are

reversible error: the ALJ's Decision incorrectly states that "Ms. Williams testified she does not

and has never taught, tutored or tested a child," even though she has, in fact, worked with

students other than the Student in this case; that the Student has had an IEP since 2017, when in

fact he has only had an IEP since March 20, 2018; and that the Parent's attorney was a member

of the IEP Team even though no IDEA regulations include a parent's attorney as a member of

the IEP Team. ECF No. 11-2 at 21–22. However, none of these alleged errors impact the ALJ's

ultimate conclusions. Thus, these criticisms "focus on the manner in which the [ALJ] expressed

[her] view of the case," and not the manner in which the ALJ reached her conclusions. *See J.P.*,

516 F.3d at 260. Further, they do not show that the findings of fact were not "regularly made"

and thus do not constitute reversible error. *See id.*

Additionally, Plaintiff separately complains about four issues that she alleges made the

administrative hearing improper: Defendants' attorney whispered to a witness during direct

examination, the ALJ allowed two and a half hours of cross-examination beyond the scope of a

45-minute direct examination, the ALJ "allowed a witness to testify based on her 'recollection'

of what another witness testified to over the Parent's counsel's objection," and the ALJ admitted

---

[6] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

into the record three pages of a document that was not disclosed at least five business days prior to the hearing pursuant to 34 C.F.R. § 300.512(a)(3). *See* ECF No. 11-2 at 22–23. Plaintiff fails, however, to make any argument as to how these issues, individually or collectively, are legally significant or the manner in which they caused Plaintiff prejudice or render the ALJ's findings irregularly made. Indeed, notwithstanding Plaintiff's concerns, there is no indication that the ALJ's process "was anything other than ordinary" because, ultimately, she allowed both parties to present evidence and make arguments and the record indicates that the ALJ resolved factual questions "in the normal way, without flipping a coin, throwing a dart, or otherwise abdicating [her] responsibility to decide the case." *See J.P.*, 516 F.3d at 259–60. The Court therefore declines to reverse the ALJ's decision based on her process or findings of fact.[7]

Plaintiff next contends that the ALJ lacked sufficient knowledge of the content and legal interpretations of the IDEA and relevant federal and state regulations, citing to the ALJ's confusion regarding the meaning of the acronym "OHI," which stands for "Other Health Impairment," her approval of the testimony of one of PGCPS's experts, who testified that she did not expect the Student to achieve his annual IEP goals within one calendar year, and her allegedly legally erroneous application of the standard for determining whether an IEP is appropriate. *See* ECF No. 11-2 at 24. The Court will address whether the ALJ correctly concluded that the Student's IEP was appropriate below, but regarding the remaining issues, Plaintiff fails to cite any authority suggesting that these errors by the ALJ were legally significant or demonstrate that those issues impacted the ultimate conclusion in any way. Thus, the Court declines to reverse the ALJ's decision on this basis.

---

[7] Plaintiff states that the identified errors are just a sampling of errors made by the ALJ, but she provides no additional specific examples. It is not the Court's role to search the record to determine the merits of a plaintiff's argument, *see R.P. ex rel. R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 811 (5th Cir. 2012), so it will decline to consider possible additional errors not identified by Plaintiff.

Finally, Plaintiff contends that the ALJ's rulings were inconsistent with the scope of the Due Process Complaint. Specifically, Plaintiff contends that the ALJ failed to rule on her claim related to the appropriateness of the IEP, changed her claim regarding PGCPS's failure to pay for the IEEs to a claim alleging PGCPS failed to review the IEEs, and ruled on two claims not alleged in the Due Process Complaint regarding PGCPS's development of an FBA and BIP and implementation of the Student's IEP and behavioral supports while the long-term substitute was in the classroom. *See* ECF No. 11-2 at 24–25. Based on a review of the record, however, the ALJ properly ruled on the issues before her. Contrary to Plaintiff's assertion, the ALJ concluded that the IEP was appropriate and explained her reasoning. *See* ALJ Decision at 39–42. Regarding the IEEs, the Due Process Complaint alleges both that PGCPS failed to pay for the IEEs and imposed excessive conditions on using the IEEs. *See* Due Process Complaint at 6. The ALJ ruled on both of these issues, finding that she did not have jurisdiction to enforce the IEE Resolution Agreement to pay for the IEEs and that PGCPS did not fail to review the IEEs by imposing excessive conditions on their use. *See* ALJ Decision at 32–34. Finally, regarding Plaintiff's concerns about the ALJ's conclusions related to the development of an FBA and BIP and the implementation of the behavior supports in the Student's IEP, these conclusions appear to be related to Plaintiff's claims regarding PGCPS's obligation to review and revise the IEP, implement behavior supports, and provide an appropriate placement. Thus, this argument does not entitle Plaintiff to summary judgment. The Court will next review arguments related to specific counts in the Complaint.

### B. Disciplinary Protections (Count I)

Plaintiff contends that although the ALJ correctly determined that PGCPS's failure to conduct timely MDRs or provide services while the Student was removed amounted to a denial

of FAPE, she incorrectly determined that PGCPS's compensatory services award of 90 minutes of counseling and three hours of academic support was sufficient to remedy that denial. *See* ECF No. 11-2 at 11. The IDEA and applicable regulations provide that "[a]fter a child with a disability has been removed from his or her current placement for 10 school days in the same school year, during any subsequent days of removal the public agency must provide services . . . ." 34 C.F.R. § 300.530(b)(2). "Within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct … the child's IEP Team … must review all relevant information in the student's file … to determine—(i) [i]f the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability; or (ii) [i]f the conduct in question was the direct result of the [local educational agency]'s failure to implement the IEP." *Id.* § 300.530(e)(1). If the IEP Team determines that the conduct was a manifestation of the child's disability, it should "return the child to the placement from which the child was removed . . . ." *Id.* § 300.530(f)(2).

The IEP Team may do so by providing compensatory services to the child. *See G ex rel. RG v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 309 (4th Cir. 2003). Compensatory education involves discretionary, prospective, or injunctive relief crafted "to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." *Id.* The plaintiff bears the burden of proving that compensatory education is an appropriate equitable remedy in the particular circumstances of the case. *Hogan v. Fairfax Cty. Sch. Bd.*, 645 F. Supp. 2d 554, 573 (E.D. Va. 2009).

Here, there is no dispute that the Student was removed for sixteen days, that PGCPS held untimely MDRs for the removals, and that the behavior that caused the Student's removals was a manifestation of his disability. Rather, the primary issue is whether PGCPS provided sufficient

compensatory services to remedy this denial of FAPE. Because the Student was disciplinarily removed for a total of sixteen days, compensatory services were only required to remedy the six additional removal days beyond the ten permitted by regulation. *See* 34 C.F.R. § 300.530(b)(2). The ALJ determined that the 90 minutes of counseling and three hours of academic support "adequately addresse[d]" the denial of FAPE because "the Student's IEP primarily focuses on behavior supports such as the counseling and provides academic supports in the area of mathematics. The awarded compensatory services will provide the needed supports in the appropriate setting of his current school with teachers and tutors." ALJ Decision at 44–45. Although Plaintiff contends that PGCPS should have provided more compensatory services, just as she failed to do in front the ALJ, she once again fails to provide any legal or evidentiary basis for her determination or state any specific amount of services that she believes should have been awarded. Because she has the burden of proof and has provided no basis for overturning the ALJ's reasonable conclusion and reasoning, Defendants are entitled to summary judgment on Count I.

### C.  IEP Review (Count II)

In Count II, Plaintiff contends that PGCPS failed to appropriately review and revise the Student's IEP. Pursuant to the IDEA, a school district is required to "[r]eview[] the child's IEP periodically, but not less than annually, to determine whether the annual goals for the child are being achieved" and "[r]evise[] the IEP, as appropriate, to address" various developments, including "[a]ny lack of expected progress toward the annual goals…" and "[i]nformation about the child provided to, or by, the parents…" 34 C.F.R. § 300.324(b)(1).

The Student's IEP at Bayne was dated March 20, 2018, thus establishing an annual review date of March 20, 2019. On September 11, 2018, within that one-year period, PGCPS

held a meeting to review the Student's progress and revise the IEP to include additional supplemental supports and services, such as anger management and crisis intervention, 22 hours of special education services per week, 30 minutes of counseling per week, and a change of placement to NFES. *See* PGCPS Ex. 30, PWN, dated September 11, 2018 at 1. The Student's IEP Team met once again on March 14, 2019, also within the one-year period, when it reviewed the Student's IEP, his academic and behavioral progress, and the FBA and Speech and Language Assessments provided by Plaintiff, and it revised the IEP to include updated academic information, such as standardized testing scores from the fall, updated behavioral information, crisis intervention room visits, disciplinary removal information, and updated measurable goals. *See* PGCPS Ex. 51, IEP and IEP Sign-In Sheet, MDR, and PWN, dated March 14, 2019. It also determined that additional testing was necessary and that it would reconvene on April 3, 2019 to determine whether the IEP would need to be revised again in light of those assessments. *Id.* Thus, the Student's IEP was clearly reviewed "periodically, but not less than annually" and revised as appropriate, *see* 34 C.F.R. § 300.324(b)(1), and Defendants are entitled to summary judgment on Count II.[8]

### D.  Behavioral Interventions (Count III)

Plaintiff next contends that PGCPS failed to appropriately use positive behavioral interventions to address the Student's problematic behaviors. Pursuant to the IDEA, the IEP Team must, "[i]n the case of a child whose behavior impedes the child's learning or that of others, consider the use of positive behavioral interventions and supports, and other strategies, to

---

[8] Plaintiff contends that the ALJ erroneously considered the September 11, 2018 meeting because it took place before the Student transferred to NFES and erroneously considered the March 14, 2019 meeting because it took place after she filed the Due Process Complaint, but she provides no legal authority for why these factors would render the meetings irrelevant. She also contends that it was a violation of the IDEA for PGCPS to wait until March 14, 2019 to review the Student's IEP in light of his academic and behavioral performance at NFES, but she once again fails to cite any legal authority suggesting that March 14, 2019 was an undue delay in violation of the IDEA.

address that behavior." 34 C.F.R. § 300.324(a)(2)(i); *see also* 20 U.S.C. § 1414(d)(3)(B). Here, the ALJ credited and relied on extensive testimony from two witnesses, who testified that NFES used a daily point sheet and the ability to earn Falcon Bucks as positive behavioral supports and that the Student participated in these programs, to conclude that the positive behavioral supports offered at NFES were also offered to the Student. *See* ALJ Decision at 43; *see also* Hr'g Tr. at 698–700, 886–889. The ALJ's credibility determinations and factfinding regarding the availability and use of positive behavioral supports for the Student are entitled to deference, *see J.P.*, 516 F.3d at 259, and Plaintiff has not provided the Court with a persuasive reason to reject them, so the Court concludes that a preponderance of the evidence shows that PGCPS did not violate the IDEA by failing to provide positive behavioral interventions and supports to address the Student's behavior. *See* 34 C.F.R. § 300.324(a)(2)(i). Accordingly, Defendants are entitled to summary judgment on Count III.

### E.  Payment for IEEs (Count IV)

In Count IV of the Complaint, Plaintiff contends that the ALJ "failed to properly analyze the FAPE requirements of IDEA with regard to [PGCPS's] obligations to pay for the IEEs it awarded to [the Student]." ECF No. 1 ¶ 57. In her Motion for Summary Judgment, however, she makes no argument as to why the ALJ's decision should be reversed on this issue. Plaintiff carries the burden of proof in this Court and she has made no attempt to do so, *see Schaffer ex rel. Schaffer*, 546 U.S. at 62, so Defendants are therefore entitled to summary judgment on Count IV.

### F.  Appropriateness of IEP (Count V)

Plaintiff contends that the ALJ applied an incorrect standard in determining that PGCPS provided the Student with an appropriate IEP. "[T]o meet its substantive obligation under the

IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *R.F. by and through E.F. v. Cecil Cty. Pub. Sch.*, 919 F.3d 237, 245–46 (4th Cir. 2019) (quoting *Endrew F.*, 137 S.Ct. at 994). "[T]his describes a general standard, not a formula," but "this standard is markedly more demanding than" a "'merely more than *de minimis*' test." *Endrew F.*, 137 S. Ct. at 1000. The IDEA, however, "does not promise perfect solutions to the vexing problems posed by the existence of learning disabilities in children and adolescents," but "rather emphasizes the provision of an appropriate education, and an adequate—not perfect—IEP." *M.L. v. Smith*, No. PX-16-3236, 2018 WL 3756722, at *9 (D. Md. Aug. 7, 2018).

Here, the ALJ explained that the September 11, 2018 IEP contained measurable goals that were appropriate to address the Student's educational and behavioral concerns, and the Student's progress reports from June 15, 2018, October 29, 2018, February 11, 2019, and March 13, 2019 indicated that he was making sufficient progress toward accomplishing those goals. ALJ Decision at 41, 46. Specifically, he was improving in the areas of social skills, math, and science, and the crisis intervention room provided appropriate behavioral support to assist the Student with problem-solving and other behavior matters. *See* ALJ Decision, Findings of Fact ¶ 7; ALJ Decision at 41, 46. Moreover, when the Student's math progress began to ebb, Plaintiff declined to utilize the math tutoring services provided by PGCPS, and the IEP Team subsequently revised the IEP goals with Plaintiff's approval to address the math concerns. *See* ALJ Decision at 46. The IEP team also reviewed the IEP's behavior goals and requested consent to conduct a new FBA for the purpose of potentially revising those behavior goals. *See id.* at 46–47. Contrasting this case with *Endrew F.*, where the Supreme Court rejected a *de minimis* standard for FAPE, the ALJ determined that, contrary to Plaintiff's assertions on this point, this

evidence showed the Student "is making more than minimal or 'de minimis progress,'" and thus

PGCPS did not fail to provide the Student with FAPE by implementing an inappropriate IEP. *Id.*

at 46.

Beyond stating, without citing to specific evidence, that the Student failed to achieve his

annual IEP goals, his reading was below grade level, and his grades were declining, Plaintiff

makes no persuasive argument as to why the Court should disregard the ALJ's factual findings

regarding the progress the Student was making under the September 11, 2018 IEP. Plaintiff also

fails to explain which provisions of the IEP were not "reasonably calculated to enable [the

Student] to make progress appropriate in light of the [Student's] circumstances," *see Endrew F.*,

137 S.Ct. at 999, or how the IEP should have been altered to address such a deficiency. As the

ALJ found, the record shows that both the September 11, 2018 IEP and the March 14, 2019 IEP

had measurable goals that "were reasonably tailored to [the Student's] unique needs, and

provided adequate, individualized special education services," *see M.L.*, 2018 WL 3756722, at

\*9, and allowed the Student to make progress academically and behaviorally or were periodically

revised where progress was less apparent, *see* ALJ Decision at 41, 46. Thus, while also making

reference to the "more than *de minimis*" standard, the ALJ cited to and applied the proper

standard and the preponderance of evidence affirms the ALJ's judgment that PGCPS provided

the Student with appropriate IEPs. Accordingly, Defendants are entitled to summary judgment

on Count V.

### G.  Appropriateness of Placement (Count VI)

Plaintiff contends that the ALJ incorrectly concluded that NFES was an appropriate

placement for the Student. The IDEA's FAPE requirement provides that a child's special

education and related services must "[i]nclude an appropriate preschool, elementary school, or

secondary school education…" 34 C.F.R. § 300.17(c). A student's placement must be reasonably calculated to provide an educational benefit and, to the extent possible, children with disabilities should be educated in the least restrictive environment ("LRE"). *See* 34 C.F.R § 300.114; *Sumter Cty.*, 642 F.3d at 487.

Relying on what she determined to be more reliable evidence from PGCPS's witnesses, the ALJ concluded that NFES was an appropriate placement for the Student. In general, PGCPS's witnesses testified about the behavioral supports in place at NFES, including trained mental and clinical health staff, positive behavior reinforcement, and a crisis intervention room. *See* ALJ Decision at 20, 42. This evidence regarding the behavioral supports in place at NFES was undisputed. *See id.* at 42. Ms. Moreland testified that both the positive behavior reinforcement and the crisis intervention room were implemented for the Student and that she did not believe the Student would achieve his IEP goals within one calendar year given that it included a transition from one school to another, but that he would make progress toward those goals. *See id.* at 23, 42. And the ALJ noted that the Student was, in fact, making progress. *See id.* at 42. Ms. Whitfield testified about the behavior supports offered by NFES inside and outside the classroom, and she opined that NFES was an appropriate placement for the Student because his behavior had improved, NFES is the LRE, and the Student "ha[d] access to non-disabled peers at NFES unlike at a private placement." *See id.* at 30–31. The ALJ found Ms. Whitfield's testimony particularly credible based on her expert knowledge of LREs, FBAs, and BIPs.

Despite the ALJ's credibility determinations, findings of fact, and explanation of her ultimate legal conclusion, Plaintiff contends that the evidence demonstrates that NFES was not an appropriate placement. Specifically, she argues that the evidence shows NFES did not use positive behavior reinforcement for the Student, a social worker was not available for the

majority of the 2018–2019 school-year, there was no full-time psychologist, the Student was subject to disciplinary removals within weeks after he began attending NFES, the Student did not receive specialized instruction per his IEP while he was disciplinarily removed to the crisis intervention room, his BIP was not implemented, and between January 2019 and March 22, 2019, the Student was in a classroom with a long-term substitute who did not have special education certification, which prevented proper implementation of the IEP during that period.

Here, again, however, the ALJ's factual findings and credibility determinations are entitled to deference, *see J.P.*, 516 F.3d at 259, and, to the extent there are disputes of fact, Plaintiff has given the Court no reason to credit Plaintiff's evidence over the evidence credited by the ALJ. Moreover, even if the Court were to credit Plaintiff's evidence, short of summarily citing to eight different sections of the IDEA regulations, Plaintiff has provided the Court with absolutely no legal authority or argument to compel the Court to substitute its own judgment on educational policy for those of the school authorities and determine that the alleged deficiencies in the services provided by NFES deprived the Student of a FAPE or render his placement at NFES inappropriate. Accordingly, Defendants are entitled to summary judgment on Count VI.

### H.  Progress Reports (Count VII)

Finally, plaintiff contends that the ALJ failed to properly analyze whether PGCPS's failure to provide quarterly IEP progress reports prevented the Student from receiving a FAPE. The IDEA requires that the school district provide "periodic reports on the progress the child is making toward meeting the annual goals (such as through the use of quarterly or other periodic reports, concurrent with the issuance of report cards)[.]" 34 C.F.R. § 300.320(a)(3)(ii). A hearing officer may find that a child did not receive FAPE if the school district fails to provide progress reports if that failure "(i) [i]mpeded the child's right to a FAPE; (ii) [s]ignificantly impeded the

parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child; or (iii) [c]aused a deprivation of educational benefit." 34 C.F.R. § 300.513(a)(2).

Here, the Student's IEP requires PGCPS to provide Plaintiff with quarterly progress reports. *See* Parent Ex. C, September 11, 2018 IEP; PGCPS Ex. 51, IEP and IEP Sign-In Sheet, MDR, and PWN, dated March 14, 2019. Contrary to Plaintiff's assertion, the ALJ found that PGCPS sent progress reports to Plaintiff on June 15, 2018, October 29, 2018, February 11, 2019, and March 13, 2019. *See* ALJ Decision, Findings of Fact ¶ 19; *see* PGCPS Ex. 49, IEP Progress Reports. The ALJ's finding is entitled to deference, *J.P.*, 516 F.3d at 259, and Plaintiff has made no persuasive argument that it should be rejected.[9] Because PGCPS did submit to Plaintiff the required progress reports, there was no need for the ALJ to determine whether failure to do so violated the Student's right to a FAPE. Accordingly, Defendants are entitled to summary judgment on Count VII.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted. The ALJ's Decision is affirmed. A separate Order shall issue.

Date: <u>August  25, 2020</u>                                              /s/_____

                                                                                        GEORGE J. HAZEL
                                                                                        United States District Judge

---

[9] In her reply brief, Plaintiff cites to a specific part of the Due Process Hearing where one witness could not recall whether she personally had submitted the February 11, 2019 progress report. *See* Hr'g Tr. at 732. This evidence is not sufficient to challenge the process by which the ALJ made her findings, *see J.P.*, 516 F.3d at 259, nor does it establish that PGCPS did not submit to Plaintiff the four progress reports in the record.